The Judges delivered their opinions.*
Judge Green.
A factor cannot pledge or deliver the property of his principal for the satisfaction of his own debt, since the legal title to the property is in the principal, and not in the factor, the latter having a special authority to sell the property for the use of his principal only. The case of an executor differs from this. The legal title is in him, and his disposition of the property, for any purpose, passes the legal title effectually. Yet the executor holds the legal title *298 in trust for creditors and legatees, whether specific, pecuniary ¿r residuary. As to them, he is guilty of a breach of trust, when he disposes of the testator’s property in any way, for his own use. And, as in all other cases, where a trustee has parted with the legal title, in breach of his trust, the cestui que trusts may pursue the property into the hands ofia purchaser, with notice of the trust and of the breach of trust; so they may, in the case of an improper sale, or other improper disposition of the testator’s assets, when the purchaser has notice of the existence and violation of the trust. For, in that case, the purchaser is guilty of a fraud, and on that account is held to be himself a trustee. But, in such case, as in all other cases, a purchaser of the legal title, without notice of the trust and of the breach of trust, being guilty of no fraud, nor of such gross negligence as amounts to evidence of fraud, may protect himself by the plea of purchase without notice; and a mortgagee for a precedent debt, is a purchaser to all intents and purposes. Accordingly, all the cases on this subject, have turned upon the enquiry, whether the purchaser had notice of the trust and of its breach. If he had notice of the existence of the trust, it did not follow, that the disposition of the property was, of course, a breach of the trust; for, it is a part of the trust that the executor shall sell or raise money upon the property, for the use of the testator’s estate; and even in the case of a disposition of the property, manifestly known by the purchaser to be for the executor’s own use, and not for the use of the estate, ' it does not follow that the purchaser is chargeable with notice of the breach of trust. That must depend upon the whole circumstances of the case: As, if the executor had settled his accounts, and appeared to be a creditor, when in fact he was a debtor; or, if the executor was himself a legatee of the .property disposed of, and the purchaser had no reason to believe that his legacy was necessary for the payment of debts. In such cases, the purchaser might justly suppose, that the executor was disposing of the pro *299 perty fairly and bona fide, and (lie purchaser could not be charged with fraud. The, fact, that the property is pledged or delivered by the executor for the satisfaction of his own precedent debt, is only important, as it proves that the purchaser knew that the executor was applying the property to his own use; and if, from other circumstances, it appears that he knew also, that he was so applying .it improperly, and in breach of his trust, then the purchaser its chargeable with fraud. As, if the executor should give a specific legacy, bequeathed to another, in satisfaction of his own debt, it would necessarily follow, that ho was violating his duty, unless the estate was indebted to him. For, such legacy coidd not properly be disposed of for any other purpose but for paying the testator’s debts; and prima facie, the disposition of it in satisfaction of his own debt, has no tendency to satisfy the testator’s debts.
1 think the administrator de bonis non has an equity, which may be asserted in a Court of Chancery.
To apply these principles, which are elaborately discussed in 14 Ves. 355, and 17 Ves. 153, to the case at bar. It is not alledged, and does not appeal’, that the appellees, A. R. M. Cunningham, knew that the slaves in question were assets of the estate of Pride. The answer is, however, somewhat evasive on that point. But, if they did know that fact, they knew, at the same time, that the wife of the executor was the residuary legatee of the whole estate; and, it does not appear, that they knew, or had any reason to believe, that any debts were due from the testator’s estate, or that the negroes in question were necessary for the payment of debts and legacies. And, in the absence of such facts, they might have taken a lien, bona fide, upon the property, as the property of Simpson, their debtor. As to the charge in the amended bill, that Simpson never had any possession of the property, but as executor, it is completely repelled by the execution of the deed, by Simpson, conveying the property as his. It is true, that an executor, who is also a legatee, taking posses *300 sion of the testator’s property, is considered as talcing possession as executor; for, he cannot, in the first instance, take it rightfully, in any' other character; and he shall be Presumed to have possessed himself rightfully, and not wrongfully. And, being originally so possessed, as executor, such possession shall be presumed to continue in the character in which it was acquired, until he does some act, shewing unequivocally, that he elects to hold the property in his character as legatee. No act can be more decisive to shew such election, than a conveyance of the property as his own, for securing the payment of his own debt. An answer, therefore, to this charge, was wholly unnecessary. The circumstance that the legal title is in the trustee, can make no difference in this case. The decree is right, and should be affirmed.
This decision will not preclude the appellants from asking a reinstatement of the injunction, or from pursuing the fund, if they shall hereafter establish the charge of a fraudulent disposition of the assets by the executor, and the participation in such fraud by the purchasers.
Judge Coalter.
I have no doubt, that a sale by an executor, for the purpose of paying his own debt, and a fortiori, a deed of trust made by him, to secure the payment of his own proper debt, when he is not in advance to the estate, so as to make such sale or incumbrance proper, is a fraudulent waste of the assets; and that, if the person purchasing, or in whose favor such trust is created, has a knowledge of, and consequently participates in, such fraud, the transaction may be set aside, either in favor of creditors, legatees, or an administrator de bonis non, with the will annexed; and, if these do not interfere, because the executor has given security, and they are satisfied to rest on that security, such sureties, it appears to me at present, have a right to call for a settlement of the estate, and to have these assets, *301 tiras fraudulently eloigned, so secured as that damage shall not arise to them, from such fraudulent combination; hut, if I am wrong as to the rights of the sureties in this case, the administrator de bonis non is before the Court in the amended bill. The executor has not answered; but, it is alledged, has absconded, and loft the country; so that the fraud, as to him, is undenied, and probably undeniable.
Can this fraud be brought home to the appellees ? Their answer, as to their knowledge that the slaves in question were of the goods of the testator, appears to me to he evasive; which may perhaps arise from that not being explicitly charged in the bill; and they seem to rely very much on the fact stated in the bill, that the wife of the executor was residuary legatee.
If the appellees in this case knew that the slaves were part of the assets, what are the circumstances ? The deed of trust is taken within about eight months after the qualification of tile-executor, who seems to have been a saddler, or shop-keeper of some kind in Petersburg; and, it is to secure A. R. M. Cunningham, the appellees, probably merchants of the same town, the sum. of $2,545 56, duo by negotiable note, endorsed by Francis Y. Yancey, and payable in sixty days after the date of the note and deed. It conveys all the articles of saddlery and merchandize in the shop, all his household and kitchen furniture, and several slaves; amongst others, those in controversy. It was stipulated, that when the note fell due, if it was not paid, the appellees, having given ten days notice before the time of payment, by a writing, to the debtor, left at his shop, if the note should not be punctually paid, the trustee should sell, &c. All this convinces me, that Simpson, the executor, was in desperate circumstances; and that the appellees knew it at the time this deed of trust was taken. They did not, at that date, advance $2,545 56; relying on the note and security then taken, and believing their debtor a man in good circumstances. It was an old debt, for which a new note and deed of trust, authorising unexampled pro *302 ceedings, were taken. They could not have presumed that a man so pressed had paid monies in advance to the estate, which would justify a conversion of the assets to own use’ Tiley were at least bound to enquire, and must have winked hard not to see, that a palpable fraud was committing. This is a very different thing from a man’s purchasing out and out, from an executor, who is committing a fraud. He has no inducement to pay his money, and take the risque of such fraud, and has no interest in shutting his eyes.
Whilst, therefore, I think the evidence, as to the knowledge of the appellees, that the slaves in question were part of the assets belonging to the estate, is not sufficient to justify a decree against them on a final hearing, (though from their residing in the same town, and the circumstance, that the executor was much in debt, and that to themselves, they probably had a knowledge of his property,) ' yet I do not think the answer such a denial on this subject, as to justify a dissolution of the injunction on the merits. I think it might well-have been dissolved and a sale directed, on the appellees giving security to abide by the final decree, or directing the money to be paid into Court, subject to its final order. These provisions not being made, but the dissolution being, as I presume, on the merits, I think the. decree is erroneous, and must be reversed, and the injunction dissolved on the terms aforesaid, and the cause remanded to be finally proceeded in.
Judge Cabell.
There is no difference of opinion as to the principles applicable to this case. We all agree, that if an executor commits a fraud by improperly selling or pledging the assets of the estate, and the purchaser or mortgagee is a participator in that fraud, the sale or mortgage should be set aside as fraudulent. I agree with the Judge who first delivered his opinion, that no such evidence of participation. *303 appears against the appellees, who claim under the deed of trust contained in ihe record. 'The transaction, as to them, may have been perfectly fair, and there is no evidence in the record to shew it otherwise.
I concur, therefore, in the opinion to affirm the decree. This, however, will not preclude the appellant from obtaining redress hv exhibiting and establishing a new case. Decree affirmed.

 Judge Brooke, absent.